# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | WILLIAM T. HART | SITTING JUDGE IF OTHER THAN ASSIGNED JUDGE | |
|---|---|---|---|
| CASE NUMBER | 03 C 5729 | DATE | JUNE 15, 2004 |
| CASE TITLE | WILLIAM CHEN v. QUARK BIOTECH, INC., etc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant's motion for summary judgment [17] is granted in part and denied in part. Plaintiff's motion for summary judgment [14] is granted in part and denied in part. Defendant will not be able to proceed on any defense based on plaintiff being discharged for any reason other than failing to perform his job in a manner acceptable to defendant's President. Count II is dismissed. This case will be referred to the assigned magistrate judge for the purpose of conducting a settlement conference within 45 days. A status hearing before Judge Hart will be held on September 8, 2004 at 11:00 a.m.

(11) ■ **[For further detail see attached Memorandum Opinion and Order.]**

| | No notices required, advised in open court. | | 4 number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| ✔ | Notices mailed by judge's staff. | | JUN 17 2004 date docketed | 24 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | June 15, 2004 date mailed notice | |
| CW | courtroom deputy's initials | Date/time received in central Clerk's Office | mqm mailing initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WILLIAM CHEN,                    )
                                 )
          Plaintiff,             )
                                 )
     v.                          )     No. 03 C 5729
                                 )
                                 )
QUARK BIOTECH, INC., a           )
California corporation,          )
                                 )
          Defendant.             )

## MEMORANDUM OPINION AND ORDER

Plaintiff William Chen is a former employee of defendant Quark Biotech, Inc. Plaintiff claims that his written employment contract, which contained a three-year term, was breached when he was discharged approximately eight months after the commencement date of the contract. Defendant contends that, consistent with provisions of the contract, plaintiff was properly discharged for cause or other adequate reason. Since the parties present no choice of law arguments and rely on Illinois law, it is assumed that Illinois contract law applies to plaintiff's contract claim. See Wood v. Mid-Valley, Inc., 942 F.2d 425, 426-27 (7th Cir. 1991); Guaranty Residential Lending, Inc. v. International Mortgage Center, Inc., 305 F. Supp. 2d 846, 851 n.4 (N.D. Ill. 2004). Plaintiff also brings a claim under the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115. Presently pending are cross motions for summary judgment.

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant. Turner v. J.V.D.B. & Associates, Inc., 330 F.3d 991, 994-95 (7th Cir. 2003); Palmer v. Marion County, 327 F.3d 588, 592 (7th Cir. 2003); Abrams v. Walker, 307 F.3d 650, 653-54 (7th Cir. 2002). The burden of establishing a lack of any genuine issue of material fact rests on the movant. Outlaw v. Newkirk, 259 F.3d 833, 837 (7th Cir. 2001); Wollin v. Gondert, 192 F.3d 616, 621-22 (7th Cir. 1999). The nonmovant, however, must make a showing sufficient to establish any essential element for which he or it will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Binz v. Brandt Construction Co., 301 F.3d 529, 532 (7th Cir. 2002); Traylor v. Brown, 295 F.3d 783, 790 (7th Cir. 2002). The movant need not provide affidavits or deposition testimony showing the nonexistence of such essential elements. Celotex, 477 U.S. at 324. Also, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. See NLFC, Inc. v. Devcom Mid-America, Inc., 45 F.3d 231, 236 (7th Cir.), cert. denied, 515 U.S. 1104 (1995); Covalt v. Carey Canada, Inc., 950 F.2d 481, 485 (7th Cir. 1991); Collins v. Associated Pathologists, Ltd., 844 F.2d 473, 476-77 (7th Cir.), cert. denied, 488 U.S. 852 (1988). As the Seventh Circuit has summarized:

> The party moving for summary judgment
> carries the initial burden of production to

identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Logan v. Commercial Union Ins. Co., 96 F.3d 971, 978 (7th Cir. 1996) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (citation and internal quotation omitted)). The moving party may discharge this burden by "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325, 106 S. Ct. 2548. Once the moving party satisfies this burden, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The nonmovant must do more, however, than demonstrate some factual disagreement between the parties; the issue must be 'material.'" Logan, 96 F.3d at 978. "Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute." Id. (citation omitted). In determining whether the nonmovant has identified a "material" issue of fact for trial, we are guided by the applicable substantive law; "[o]nly disputes that could affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." McGinn v. Burlington Northern R.R. Co., 102 F.3d 295, 298 (7th Cir. 1996) (citation omitted). Furthermore, a factual dispute is "genuine" for summary judgment purposes only when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Hence, a "metaphysical doubt" regarding the existence of a genuine fact issue is not enough to stave off summary judgment, and "the nonmovant fails to demonstrate a genuine issue for trial 'where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party . . . .'" Logan, 96 F.3d at 978 (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).

Outlaw, 259 F.3d at 837.

Unless otherwise noted, the following facts are undisputed and taken as true for both sides' motions. Defendant is a pharmaceutical company in the business of developing new drugs for the treatment of human diseases. Plaintiff is a research scientist in molecular biology and had experience operating "knockout mice" laboratories. Plaintiff was hired to be in charge of defendant's knockout mice activities, which is a process of studying human genes by identifying comparable mice genes, removing selected genes, and investigating the results thereof. There are three phases to such activity. Phase one consists primarily of gene cloning and the creation of knockout or targeting vectors. The second phase involves work with embryonic stem cells, including the introduction of targeting vectors into embryonic stem cells and the isolation of embryonic stem cell clones in which one part of a specific gene is knocked out or targeted. The final phase is the introduction of embryonic stem cells into a mouse embryo. The knockout mice laboratory that plaintiff helped set up was located in Israel.

Plaintiff was not represented by an attorney during contract negotiations. Prior to working for defendant, plaintiff resided in Illinois and worked at the University of Illinois. Prior to March 8, 2001, defendant proposed contract language that would have made plaintiff an at-will employee. Plaintiff rejected that language and defendant drafted different language that was incorporated in the final contract dated March 8, 2001. The parties' contract provided that plaintiff was to begin work

on April 1, 2001 at a starting salary of $120,000 per annum. Plaintiff's initial assignment was in Israel, following which he was to be assigned to work in Cleveland, Ohio.

The contract provision most pertinent to the parties' dispute reads as follows:

> 6. The terms of this employment agreement are in place for three years as long as my performance is acceptable in the judgment of Quark Biotech's President and no conditions constituting cause for termination, as defined below, occur. I acknowledge that this employment agreement may be terminated by Quark Biotech at any time for cause, which includes but is not limited to theft, gross misconduct, conviction of a felony, insubordination or neglect of my job responsibilities. In the event of termination for cause, I will be paid salary continuation for only two months irrespective of the term remaining under this employment agreement. I may terminate the relationship before the end of three years upon giving notice. All rights and obligations of both parties terminate upon my giving of notice.

After returning to the United States, but before relocating to Cleveland, plaintiff's employment was terminated effective December 4, 2001. In a letter to plaintiff dated that day, defendant's President, Daniel Zurr, wrote:

> Much to my regret, after carefully evaluating the results of your work which was done during your recent stay in Israel, we reached the conclusion that the performance of your work was unacceptable.
> The scientific results of your work did not meet our expectations, therefore, we decided to terminate your employment effective today, according to section number 6 of your Employment Agreement, dated March 8th 2001.
> I believe you are familiar with the facts and reasons behind this conclusion, nevertheless, Dr. Paz Einat is ready to provide you with all the necessary facts and explanations.

> As a result of my decision you will not be relocated to Cleveland.

Plaintiff was provided two months of pay following termination.

Under the plain language of the contract, plaintiff had a three-year term of employment as long as two conditions continued to be met. Plaintiff had to (a) perform in a manner acceptable to defendant's President and (b) no cause for termination could exist. As to the first requirement, plaintiff contends this clause is too vague to be enforceable and would render the three-year term illusory. Plaintiff also invokes the rule of contract construction that any ambiguity in this clause should be construed against defendant since defendant drafted the language. See Berutti v. Dierks Foods, Inc., 145 Ill. App. 3d 931, 496 N.E.2d 350, 352 (2d Dist. 1986).

Contrary to plaintiff's contention, under Illinois law, satisfaction clauses in contracts, including employment contracts, are enforceable. See Beasley v. St. Mary's Hospital of Centralia, 200 Ill. App. 3d 1024, 558 N.E.2d 677, 682 (5th Dist.), appeal denied, 135 Ill. 2d 554, 564 N.E.3d 835 (1990); Kohler v. Leslie Hindman, Inc., 80 F.3d 1181, 1186-87 (7th Cir. 1996); King v. Telesphere International, Inc., 632 F. Supp. 981, 984 (N.D. Ill. 1986). Further, Illinois courts have developed rules for interpreting such clauses. Kohler, 80 F.3d at 1186-87.

> [S]atisfaction clauses in Illinois come in two categories: those that make the exercise of discretion purely subjective and those that require the exercise of discretion according to objective factors. The first category includes satisfaction clauses invoking the feelings, taste

- 6 -

> or judgment of the party exercising discretion.
> When a satisfaction clause conveys this sort of
> subjective discretion, it does not, however,
> remove all limitations on the exercise of
> discretion. The party that has the right to act
> according to its personal judgment or within its
> sole discretion must still act in good faith.

Id. (citations omitted).

Personal services contracts, such as the present one, generally fall into the first category involving the subjective standard. Beasley, 558 N.E.2d at 682. The contract language also supports such a conclusion because whether plaintiff's performance was acceptable was left to the "judgment" of defendant's President. See id.; Kohler, 80 F.3d at 1186. Thus, the determination of whether plaintiff's performance was acceptable was reserved for Zurr; he was "the sole judge of his satisfaction, 'without regard to the justice or reasonableness of his decision, and a court or jury cannot say that such party should have been satisfied when he asserts that he is not.'" Beasley, 558 N.E.2d at 682 (quoting Ray v. Georgetown Life Insurance Co., 94 Ill. App. 3d 863, 419 N.E.2d 721, 722 (3d Dist. 1981)). As to the satisfaction clause, plaintiff can only avoid summary judgment if (a) Zurr did not find plaintiff's performance unacceptable; (b) Zurr discharged plaintiff for a reason other than unacceptable performance; or (c) Zurr did not act honestly and in accordance with defendant's duty of good faith and fair dealing. Beasley, 558 N.E.2d at 682. The burden of proof is on plaintiff to make this showing. See id.; RIV VIL, Inc. v. Tucker, 979 F. Supp. 645, 657 (N.D. Ill. 1997). It is not enough

for the evidence to show that defendant was incorrect or unreasonable in finding plaintiff's performance to be unacceptable as long as defendant's President actually, sincerely, and in good faith believed plaintiff's performance was unacceptable and that was defendant's motivation for discharging plaintiff.

Plaintiff's own deposition testimony and his own affidavit support that he was competently performing the research work he was assigned to perform. Defendant, however, points to the testimony of its Chief Scientist, Paz Einat, who was plaintiff's direct supervisor. In Fall 2001, Shlomid Giliad began working in the knockout lab. Einat testified that, in November 2001, Giliad raised with Einat questions about the quality of plaintiff's work. Einat testified that he thereafter investigated and came to the conclusion that there were problems with the competency of plaintiff's work. The problems included poor selection of primers used to perform preliminary chain reactions, improper controls used in establishing preliminary reactions, and improper gene interpretation.[1] The testimony of Einat supports both that plaintiff was not performing satisfactorily and that Einat sincerely believed that. In light of plaintiff's testimony, however, a genuine factual dispute

---

[1] As support for Einat's evaluation of plaintiff's work, the court relies on Einat's deposition testimony itself. No reliance is placed on Einat's after-the-fact memorandum regarding the reasons for plaintiff's dismissal (Def. Exh. D), which Einat wrote in 2002, a number of months after plaintiff's discharge. No foundation is presented supporting that this document is admissible as a business record or on some other ground.

exists as to whether plaintiff's work performance was adequate or not.

A genuine factual dispute also exists as to the sincerity of Einat's belief that plaintiff was not performing competently. In addition to the disputed evidence that plaintiff was actually performing competently, a dispute as to the sincerity of Einat's belief is supported by the fact that, prior to the December 4, 2001, plaintiff received no written criticism of his work and no written documentation of any criticism was created by Einat or any other employee of defendant. Also, plaintiff states in his affidavit that, prior to December 4, 2001, he also received no oral criticism from Einat nor any other employee of defendant. That testimony, however, is partially disputed by Einat who testified at his deposition that, shortly before December 4, 2001, he once raised oral questions with plaintiff regarding the adequacy of plaintiff's findings. It is undisputed that, shortly after receiving the December 4 letter, plaintiff spoke with Einat who, contrary to Zurr's suggestion in the December 4 letter, did not provide plaintiff with any details or explanation regarding the grounds for his discharge. Neither Einat nor anyone else at defendant provided plaintiff with any opportunity to respond to the claims that his work was not competent. Plaintiff also testified that, in the conversation with Einat that occurred shortly after his termination, Einat stated that the knockout lab was being eliminated because of budget problems. This statement, which is admissible against defendant as an admission of an

agent, supports that plaintiff's employment was terminated for a reason other than the competency of plaintiff's work. A genuine factual dispute exists as to the budget problems in that Einat testified that what he told plaintiff was that the knockout lab might be ended because, following plaintiff's discharge, defendant had no employee capable of running the lab. For the foregoing reasons, a genuine factual dispute exists regarding whether Einat sincerely believed that plaintiff's work was incompetent and that he should be discharged for that reason.

Of course, Einat's subjective motives and beliefs are not the direct concern regarding whether plaintiff's discharge breached the employment contract. The question is whether plaintiff was discharged because plaintiff's performance was not acceptable in the judgment of Zurr, defendant's President. While defendant asserts in its Rule 56.1 statements that Zurr discussed plaintiff's performance with Einat and Einat's supervisor and that Zurr sincerely believed plaintiff's performance was unacceptable, most of those assertions are unsupported by any citation to the record. See Def. Rule 56.1 Stmt. of Material Facts ¶¶ 21-28; Def. Rule 56.1 Stmt. of Additional Facts ¶¶ 51-56. Defendant cites to no deposition testimony of Einat or Zurr supporting that they discussed plaintiff's performance prior to his discharge or that Zurr concluded that plaintiff's performance was unacceptable. The only support for Zurr's belief

that is cited is the December 4 letter itself.² Similar to Einat, a genuine factual dispute exists as to whether Zurr actually believed that plaintiff's performance was unacceptable and whether plaintiff's performance was the actual motivation for plaintiff's discharge. There is no evidence that, prior to plaintiff's discharge, Zurr actually discussed plaintiff's performance with Einat or other supervisors or coworkers of plaintiff or that Zurr was even aware of anything concerning the quality of plaintiff's work performance.³ Also, the facts that plaintiff was never provided performance guidelines or goals, no written documentation of poor performance existed prior to plaintiff's discharge, and that plaintiff was provided no opportunity to respond to the charges of incompetence would reasonably support an inference of insincerity. Additionally, the evidence supporting that plaintiff's lab was eliminated because of budget problems supports that plaintiff was discharged for a reason other than the quality of his performance.

On the evidence before the court, a genuine factual dispute exists as to whether plaintiff was properly discharged based on his performance not being acceptable to defendant's

---

²Defendant also cites to plaintiff's deposition testimony in which plaintiff failed to specifically identify any facts of which he had personal knowledge that would support that Zurr's assertion as to his performance was not in good faith. Such testimony from a party is of little or no probative value. See Fenje v. Feld, 301 F. Supp. 2d 781, 818 (N.D. Ill. 2003).

³Defendant does cite to testimony that Einat discussed his memorandum with Zurr, but that would have been well after plaintiff had already been discharged.

President. Therefore, plaintiff cannot be entitled to summary judgment. Defendant also cannot be entitled to summary judgment on this ground. However, it still must be considered whether defendant could be entitled to summary judgment based on the termination for cause provision or, alternatively, whether plaintiff would be entitled to partial summary judgment removing the termination for cause issue from the case.

Plaintiff contends the termination for cause clause should be construed as being limited to the specific grounds set forth in § 6 of the parties' contract. The contract, however, specifically states that cause "includes but is not limited to" the listed grounds. This is a clear statement that other possible grounds for cause may exist. However, absent some indication to the contrary, the *ejusdem generis* rule of contract construction should be applied, which calls for limiting other grounds included in this clause to ones that are similar to those that are expressly included in the list, that is, they must fall within the same general class of conduct. See *Save Our Little Vermillion Environment, Inc. v. Illinois Cement Co.*, 311 Ill. App. 3d 747, 725 N.E.2d 386, 390 (3d Dist.), *appeal denied*, 189 Ill. 2d 681, 731 N.E.2d 771 (2000). The enumerated grounds are "theft, gross misconduct, conviction of a felony, insubordination or neglect of my job responsibilities." The first four items all involve malfeasance and conduct that is of a more extreme nature than plaintiff's alleged inability to competently perform complex scientific research. The last item,

neglect of job responsibilities, is also distinct from, and dissimilar to, incompetently performing one's job duties. The plain meaning of neglect of job responsibilities is that the employee is ignoring his job duties or failing to put forth an adequate effort. That is a different class of conduct than lacking the skills to adequately perform one's job responsibilities. There is no evidence that plaintiff was not putting forth a sufficient effort. Plaintiff's alleged unacceptable performance does not fall within the same class of conduct as those specifically enumerated in the termination for cause clause. This is especially evident when it is considered that defendant drafted the contract language and therefore any ambiguity should be construed against defendant. The evidence does not support that plaintiff engaged in any conduct that would fall under the termination for cause clause of the parties' contract.

Defendant also contends that, even if the employment contract does not have an express provision permitting termination for poor performance, such a provision will be read into the contract. Although not cited by defendant, there is case law supporting that an employee may be discharged for a ground that constitutes good cause even if it is not one of the grounds that is included in a contract's specific list of grounds for discharge. See Corman Aircraft Corporation v. Weihmiller, 78 F.2d 241 (7th Cir. 1935); H. Vincent Allen & Associates, Inc. v. Weis, 63 Ill. App. 3d 285, 379 N.E.2d 765, 772 (1st Dist. 1978)

(dictum).[4] See also Berutti, 496 N.E.2d at 354. However, the Illinois courts have also held that the grounds for discharge that will be read into a contract are limited. In Allen, 379 N.E.2d at 772, the court indicated the employee's conduct would qualify as good cause if the conduct had a natural tendency to injure the employer's business. Berutti distinguished Allen as being limited to its specific facts, that is, a corporate officer breaching his fiduciary duty by attempting to solicit away the corporation's business will constitute good cause for discharge even if not specifically set forth in the contract. See Berutti, 496 N.E.2d at 354. In Berutti, the court would not, as a matter of law, read into a contract that an employee had to perform at a specific level to avoid being discharged. Id. The court noted that defendant could have included a specific performance level in the contract had it desired to impose one as a condition of employment. Similarly, in Pokora v. Warehouse Direct, Inc., 322 Ill. App. 3d 870, 751 N.E.2d 1204, 1209-10 (2d Dist. 2001), the Illinois Appellate Court also declined to read into a contract for a specific term that, in order to remain employed, the employee had to satisfy performance requirements that were not written into the employment contract. Consistent with Berutti and Pokora, it will not be read into the contract--which was drafted by defendant--that, in order to avoid discharge for

---

[4]Although Allen states that this rule applies even if grounds for discharge are specifically delineated in the contract, the contract at issue in Allen did not contain such a delineation. Allen involves reading good cause into a contract that did not otherwise define grounds for discharge.

cause, plaintiff had to satisfy performance standards that were not otherwise included in the parties' contract.[5]

Plaintiff is entitled to partial summary judgment precluding any defense based on plaintiff being discharged for cause. The issue remaining for trial on plaintiff's contract claim is whether plaintiff was properly discharged for failing to perform his job in a manner acceptable to defendant's President.

Defendant also moves for summary judgment dismissing plaintiff's IWPCA claim. Defendant contends the IWPCA is inapplicable because plaintiff's work was performed outside Illinois. Plaintiff points to evidence that he was in Chicago for a few weeks and performed work for defendant while in Chicago. However, plaintiff was paid for that work. The unpaid wages that plaintiff seeks as damages are for work that would have been performed in Ohio in 2002 and thereafter. The IWPCA does not apply to such a claim. See Khan v. Van Remmen, Inc., 325 Ill. App. 3d 49, 756 N.E.2d 902, 912 (2d Dist. 2001). The Count II IWPCA claim against defendant will be dismissed.

This appears to be a case that is amenable to settlement. The case will be referred to the assigned magistrate judge to conduct a settlement conference.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment [17] is granted in part and denied in part.

---

[5]Even if failure to perform adequately had been held to be a ground for discharge under the parties' contract, defendant would not be entitled to summary judgment. As previously discussed, a genuine factual dispute exists as to whether plaintiff's job performance was deficient.

Plaintiff's motion for summary judgment [14] is granted in part and denied in part. Defendant will not be able to proceed on any defense based on plaintiff being discharged for any reason other than failing to perform his job in a manner acceptable to defendant's President. Count II is dismissed. This case will be referred to the assigned magistrate judge for the purpose of conducting a settlement conference within 45 days. A status hearing before Judge Hart will be held on September 8, 2004 at 11:00 a.m.

ENTER:

*William T. Hart*
UNITED STATES DISTRICT JUDGE

DATED: JUNE 15, 2004